IRENE HOPWOOD (NOW GIBB), APPELLANT, V. FREDERICK
HOPWOOD, APPELLEE.

100 N. W. 2d 833

Filed February 5, 1960. No. 34706.

*Ray E. Sabata* and *Thomas & Thomas,* for appellant.

*Mills, Mills & Mills,* for appellee.

Heard before CARTER, MESSMORE, YEAGER, CHAPPELL,
WENKE, and BOSLAUGH, JJ.

CHAPPELL, J.

Frederick Hopwood was defendant in an original
divorce suit instituted by Irene Hopwood as plaintiff,
wherein on December 11, 1940, a judgment was ren-
dered granting plaintiff an absolute divorce from de-
fendant, awarding plaintiff custody of their two minor
children, and ordering defendant to "pay toward the
support and maintenance of said children the sum of
$10.00 per month until further order of the court, said
payment to be made on the first of each and every
month to the plaintiff." By agreement, plaintiff and
defendant had theretofore made "a complete property
settlement * * * of any and all alimony, temporary and
permanent" and said property settlement was "approved
and confirmed" by the trial court's decree. Thus, de-
fendant was never legally obligated to pay plaintiff any
amount except $10 a month as child support.

Section 25-2210, R. R. S. 1943, provides in part that:
"* * * whenever any judgment is paid and discharged,
the clerk shall enter such fact upon the judgment record
in a column provided for that purpose." Referring
thereto, this court held in Manker v. Sine, 47 Neb. 736,

66 N. W. 840, that: "The district court may, on motion and satisfactory proof that a judgment had been fully paid or satisfied by the act of the parties thereto, order it discharged and canceled of record."

In that connection, on April 22, 1958, defendant filed a motion in the original divorce case for satisfaction of the judgment for child support, alleging in substance that the judgment had been paid in full up to the time when the children respectively became self-supporting on October 18, 1950, and of age on March 18, 1954, but upon demand, plaintiff, now a resident of Colorado Springs, Colorado, had refused as demanded on January 15, 1958, to satisfy and discharge the judgment of record.

Thereafter, on May 2, 1958, the parties filed a stipulation, agreeing that plaintiff, Irene Hopwood, now Mrs. Irene Gibb, claimed that $1,440 remained unpaid upon the judgment for child support; that such sum was presently in controversy and in dispute by the parties in this proceeding; that to secure satisfaction and discharge of the judgment of record by plaintiff without prejudice to the controversy, defendant agreed to immediately deposit $1,440 with the clerk of the district court for Polk County pending determination of the controversy by judicial action or agreement of the parties; and that upon said determination, any amount found due plaintiff and unpaid to her should be paid to plaintiff's attorney for plaintiff. Such sum was so deposited by defendant, and accordingly plaintiff executed a satisfaction and discharge of the judgment for child support on May 2, 1958, and same was filed of record.

Thereafter, on September 26, 1958, defendant filed an amended motion for satisfaction of the judgment and for a decree distributing said sum of $1,440. Such motion generally renewed the allegations set forth in defendant's original motion; and alleged that between the time of the decree and November 1, 1945, defendant had paid plaintiff personally and she had received a sum in

excess of defendant's total liability under the judgment by payments made thereon before entering military service of the United States, and thereafter by monthly allotments for child support, payable to plaintiff as authorized by law.

After hearing, whereat evidence was adduced by the parties, the trial court rendered a judgment finding and adjudging that: "* * * defendant has paid or caused to be paid to and the plaintiff has received a sum in excess of $1440.00 stipulated by the parties to be the amount of the accrued child support under the decree of this court entered in this cause on December 11th, 1940, said sum of $1440.00 being now on deposit with the Clerk of the District Court of Polk County, Nebraska, in accordance with the stipulation of the parties filed herein on May 2nd, 1958. * * * said judgment for child support has been paid in full and * * * that the defendant * * * is not indebted to the plaintiff in any sum of money by reason of said judgment"; and that said defendant "is the owner of and entitled to the immediate return of said sum of $1440.00 so deposited and the Clerk of the District Court * * * is hereby ordered to pay said sum to the defendant instanter, all at the cost of the defendant * * *."

Thereafter, plaintiff's motion for new trial was overruled, and she appealed, assigning that the judgment was contrary to law and was not sustained by the evidence. We do not sustain the assignment.

The facts heretofore and hereafter recited are not in dispute except with regard to the amount of child support paid to plaintiff by defendant before he entered the United States Army. However, that issue is of little importance here, because admittedly if defendant were entitled to have the allotments made by him and paid to plaintiff and received by her for child support, as she requested, while he was serving in the United States Army, credited on the judgment for child support, then the total thereof was admittedly in excess of the

total amount for which plaintiff claimed he was liable under such judgment, which was never modified by the trial court, and defendant's legal liability to continue to pay an additional $10 a month as child support admittedly terminated and became inoperative when the children became self-supporting or reached their majority and no longer needed or required support, which occurred long before this proceeding was instituted by defendant.

In that connection, on or about May 13, 1942, defendant received a notice that the local draft board had classified him as 1-A for military service. Thereafter, defendant was drafted into the army and went on active duty August 14, 1942, during the war. About that time, the matter of allowances for his children was brought to his attention when he took out government insurance for his children, and premiums therefor were deducted from his monthly pay, but nothing was done at that time about making allotments to plaintiff for his children, although defendant then disclosed his liability of $10 a month for their support to his military superiors. Herein it was stipulated that a named lawyer in David City represented plaintiff and that he was deceased. Plaintiff herself testified that he represented her for the divorce in 1940, and that he thereafter represented her in getting child support and allowances from the government. The matter of allowances for defendant's children was again brought to defendant's attention by army authorities about March 1943, after they had received a letter from plaintiff's counsel relating thereto. Thereupon defendant informed his company commander that he had two children for whose support he was supposed to pay plaintiff $10 a month. Defendant then made an allotment of $10 a month out of his pay to plaintiff for child support, and from March 1943, to and including February 1944, plaintiff was paid and received such $10 each month, which totalled $120.

Effective in 1943, the Servicemen's Dependents Allow-

ance Act of 1942 (Title 37, U.S.C.A., §§ 201 to 221) was amended as approved October 26, 1943, "so as to liberalize family allowances" and permit plaintiff to be paid $62 a month for child support under section 105 of the act as amended, if defendant was willing to make such allotment and have his "monthly pay * * * reduced by, or charged with, the amount of $22," under subsection 106a of the 1942 act, as directed in the act as amended. Thus, in February 1944, while defendant was in foreign service, plaintiff's counsel again wrote a letter to defendant's superiors seeking the additional allowances as provided in the act as amended, so defendant's Captain again called defendant in for consultation, whereat a warrant officer figured up the total amount of such child support allowances as could be lawfuly made to plaintiff by defendant. It will be remembered that defendant was never legally obligated to pay plaintiff more than $10 a month for child support, but believing that the entire allotment of $62 a month as requested by plaintiff's counsel would be credited in satisfaction and liquidation of the judgment for child support, and that plaintiff had agreed thereto as well, defendant then made such an allotment, which he was not legally required to do, and his pay was reduced or charged with $22 a month. In such respect, the evidence that plaintiff agreed that the allotments of $62 a month would be credited in satisfaction of the judgment for child support was hearsay, but be that as it may, the record discloses that plaintiff's counsel requested that such allotments should be paid to plaintiff for child support, and both plaintiff and her counsel well knew at all times that defendant was only liable for $10 a month. Further, after the allotments of $62 a month were so made, plaintiff was paid and voluntarily received them in the manner and amount herein set forth, and thereafter she instituted no legal action to enforce the judgment and made no claim to defendant that the judgment was not lawfully paid in full for almost 13 years, after the allot-

ments terminated and defendant was discharged from the United States Army. Now plaintiff contends that defendant was still liable for $10 a month with interest for child support payments which she claims had accrued and were unpaid before defendant entered military service and those which she claims had accrued and were unpaid after defendant was discharged from the service; and that the excess of the allotments paid by the government should not be credited thereon. We do not agree.

In that connection, it is admitted that such allotment of $62 was made retroactive for all purposes by defendant and the government from February 1944, when plaintiff's counsel requested that defendant make such allotment, to November 1, 1943. Thus, plaintiff was paid and received $270 in April 1944, as child support, which included $52 a month for 4 months from November 1, 1943, to and including February 1944, or $208, plus $62 for March 1944, and defendant made up the difference in his monthly pay deductions. Thereafter, from April 1944, to and including October 1945, plaintiff was paid and received $62 a month, all of which made a total of $1,448. Thus, from March 1943, to and including October 1945, plaintiff was paid and received a total of $1,568 from the allotments as child support up to the time defendant was discharged from the service. Such sum, without adding any sums paid by defendant before he entered the service, was admittedly in excess of the total amount for which plaintiff claimed that defendant was liable under the judgment for child support. The question presented is whether or not under the circumstances presented herein, defendant was entitled to credit for all such allotments on the total amount of the judgment for child support. If he was, the judgment of the trial court should be affirmed, and we conclude that it should be.

Concededly, the amount of $10 a month, which the trial court ordered defendant to pay plaintiff as child

support, measured at all times the entire extent of defendant's legal obligation. Also, of course, the federal statute could not set aside, nullify, or modify that judgment, and no contention is made that it did. The sole question here is whether or not the judgment had been personally paid in full to plaintiff as she requested. Contrary to plaintiff's contention, Ruehle v. Ruehle, 161 Neb. 691, 74 N. W. 2d 689, is entirely distinguishable factually from the case at bar.

Plaintiff relies primarily upon Palow v. Kitchin, 149 Me. 113, 99 A. 2d 305, which cited and relied upon Keen v. Goodwin, 28 Wash. 2d 332, 182 P. 2d 697, Hinton v. Hinton, 211 Ark. 159, 199 S. W. 2d 591, and Kipping v. Kipping, 186 Tenn. 247, 209 S. W. 2d 27. Such authorities conclude in effect that the right of a soldier to dependents' allowances under the Servicemen's Dependents Allowance Act is not a gift or gratuity flowing from the government to the soldier's dependents, but is an integral part of his contract of enlistment, and lawfully enforceable. They also conclude that while the federal act was not a substitute for and did not of itself discharge the liability of a serviceman under the judgment for child support, nevertheless the payments of allotments thereunder, including the amount deducted from the soldier's pay and that allowed by the government, when actually made, they being in sufficient amount therefor, discharged a soldier's liability under a child support judgment both before he enlisted and thereafter until the allotments terminated by his discharge from the service. However, such cases concluded that thereafter, if the judgment was still existing, operative, and unsatisfied by the parties, and proceedings were then brought to recover thereunder for existing and continuing necessary support of the children, then the amount received from allotments over and above the payments due and accruing under such a judgment did not constitute prepayment of amounts accruing and unpaid after termination of the allotments.

Be that as it may, such a situation does not exist in the case at bar. In that connection, the judgment for child support here involved has long since admittedly terminated and become inoperative as heretofore stated, and the children long ago reached their majority and required no further support. Therefore, this cause is simply a controversy between plaintiff and defendant in which, as a defense to defendant's motion for satisfaction of the judgment for child support, plaintiff seeks to recover child support payments, not for necessary support of the children but for her own benefit, which payments without dispute plaintiff has long ago been personally paid in full by defendant in the manner and amounts as requested by plaintiff.

In that connection, defendant relies primarily upon Brooks v. Brooks, 204 Ga. 412, 49 S. E. 2d 881, decided October 13, 1948, which we believe is identical in principle and comparable in all material factual respects with the case at bar. In that case, on September 3, 1934, Mrs. Effie Edna Brooks, as plaintiff, was granted an absolute divorce from defendant, James C. Brooks, who was ordered by the judgment to pay plaintiff $20 a month for the support of two minor children until they reached majority. By answer to a contempt proceeding instituted by plaintiff against defendant and heard on May 31, 1948, some 13 years, 8 months, and 27 days after rendition of the judgment for child support, defendant urged, as here, that by crediting the total amount due under the judgment with the amounts alloted to his children and paid to plaintiff under the Servicemen's Dependents Allowance Act, while defendant was serving in the armed forces, the judgment would be liquidated and there would be no balance due under the judgment. The judgment in the trial court was for defendant, and plaintiff took error to the Supreme Court where such judgment was affirmed. As pointed out by that court, the record presented the sole question whether payments made by the United States govern-

ment under the Servicemen's Dependents Allowance Act in excess of the amounts deducted from defendant's pay were to be credited against defendant's judgment liability for child support. The court then said: "An affirmative answer will necessarily affirm the judgment of the trial court, to which exception is here taken, since it was stipulated by the parties that, if the defendant was entitled to such credits, there would be no balance due under the judgment."

A stipulation identical thereto in all material respects, when viewed in the light of undisputed evidence, appears in the case at bar. In Brooks v. Brooks, *supra,* after citing and quoting from certain sections of the Servicemen's Dependents Allowance Act, the court said: "The two minor children of the defendant were entitled to receive, under the express terms of this act, irrespective of the alimony judgment, and did receive the sum of $62 per month as a 'family allowance.' Of this amount $22 was deducted from the service pay. The remaining $40 was paid by the Government. It seems to be clear that it was not the intention of the Congress that the $40 should be considered as a gift to the children simply because the father was serving in the Armed Forces. but that it was contributed toward their support in recognition of the fact that their father was still obligated to support them, and being in the enlisted ranks, his regular service pay was inadequate. By this act the Government undertook to help support the dependents of the servicemen at the time when the men themselves might have been unable to do so because their full time and energies were demanded in the defense of their homes and country. The right to this additional allowance from the Government was wholly dependent on the fact that the father was serving in the Armed Forces, and as compared to the services actually rendered it was but an additional token of appreciation from a grateful nation.

"To hold that only the amount actually deducted from

the serviceman's pay could be applied toward liquidation of the alimony judgment, would seem to be in direct conflict with the intent and purpose of the act, and would work an unjust hardship on those under similar circumstances who have honorably served their country."

The reasoning of that opinion appears to be perfectly logical, equitable, and just, and we deem it applicable and controlling in the case at bar.

For reasons heretofore stated, we conclude that the judgment of the trial court should be and hereby is affirmed. All costs in this court are taxed to defendant.

AFFIRMED.

YEAGER, J., concurs in result.