## A90A0361. WEAVER v. CHESTER et al.

(393 SE2d 715)

BANKE, Presiding Judge.

The Georgia Department of Human Resources (DHR) sued appellee Ronnie Chester pursuant to the Child Support Recovery Act, OCGA § 19-11-1 et seq., seeking reimbursement for certain public assistance benefits which it had paid to the appellant, Paula A. Weaver, for the support of a minor child alleged to be Chester's son. Ms. Weaver was added as an additional plaintiff; and the issue of paternity was ultimately tried before a jury, resulting in a determination that Chester was in fact the biological father of the child. Based on this verdict, the trial court entered judgment against him in the amount of the public assistance benefits which had been paid to the appellant for the support of the child and also ordered him to make future child-support payments in the amount of $147.50 per week. However, the court denied a request by Ms. Weaver for an award of back support from Chester for those periods during the child's life when she had not been receiving public assistance benefits, concluding that "no legal basis" existed for such a claim. The case is before us pursuant to our grant of Ms. Weaver's application for a discretionary appeal from this latter portion of the court's judgment. Although the DHR is styled as a co-appellee in the case, it has filed a brief supporting the appellant's claim for back child support. *Held*:

There would appear to be no question that the father of a child born out of wedlock is under a legal obligation to support the child, regardless of whether there has been a prior adjudication of paternity. Pursuant to OCGA §§ 19-7-2 and 19-7-24, it is the duty of each parent, whether of a legitimate or an illegitimate child, "to provide for the maintenance, protection, and education" of the child until the child reaches the age of majority, "except to the extent that the duty of one parent is otherwise or further defined by court order." Implicit in the latter language is the assumption that the parent's duty to support his or her child exists prior to the entry of any such court order.

It is, of course, well settled that a putative father may be subjected to criminal sanctions for abandonment under OCGA § 19-10-1 without a prior paternity adjudication. See, e.g., *Crayton v. State*, 166 Ga. App. 544 (305 SE2d 19) (1983). If a father can be imprisoned for having failed to support his child during the period before a judicial determination of paternity was made, there would appear to be no bar to the entry of a civil judgment against him to enforce the same support obligation. Indeed, the Uniform Reciprocal Enforcement of Support Act expressly provides for the recovery of past support expenses from a putative father, as follows: "If the court of the responding state finds a duty of support, it may order the respondent to furnish support and to pay arrearages due under any existing court order

*or to furnish reimbursement for reasonable expenses actually incurred in the absence of a court order* and may subject the property of the respondent to such order." (Emphasis supplied.) OCGA § 19-11-63. We must agree with the appellant that the Legislature could not have intended to give out-of-state custodians of minor children a greater entitlement to recover child support from Georgia parents than is enjoyed by custodians who are residents of this state.

Chester argues that a putative father's obligation to support his illegitimate child is expressly conditioned by the following emphasized language from the Child Support Recovery Act on a prior adjudication of paternity: *"Whenever a man has been adjudicated by a court of competent jurisdiction as the father of a child born out of wedlock . . . he shall be legally liable for the support of the child in the same manner as he would owe the duty of support if the child were his legitimate child."* OCGA § 19-11-14. (Emphasis supplied.) See also OCGA § 19-11-43 (6). However, as we interpret this language it is not the father's obligation to support the child which is made contingent upon an adjudication of paternity but simply the right to enforce that obligation through legal process. "The duty of the father of an illegitimate child to support such child is not created by the judicial determination of paternity. That determination is merely a procedural prerequisite to the enforcement of the duty by legal action. The father's duty to support his child arises when the child is born." *Tidwell v. Booker,* 290 N.C. 98, 116 (225 SE2d 816, 827) (1976).

In concluding that OCGA § 19-11-14 permits the recovery of back child support from a father upon an adjudication of his paternity, we are in harmony with the courts of several other jurisdictions which have been called upon to construe similar statutory provisions. For example, the North Carolina Court of Appeals, relying on the above-quoted language from the North Carolina Supreme Court's decision in *Tidwell v. Booker,* supra, recently held that the mother of an illegitimate child was entitled to recover back child support from a putative father under a statute specifying that the support obligations of the father of an illegitimate child may be determined and enforced "[u]pon and after the establishment of paternity. . . ." *Napowsa v. Langston,* 381 SE2d 882 (N.C. App. 1989). Similarly, in *Adams v. Stotts,* 667 SW2d 798 (Tex. App. 1983), the Texas Court of Appeals allowed a recovery of back support upon an adjudication of paternity under a statute providing that "no alleged father denying paternity may be required to make any payment of the support of the child until paternity is established." And in *Nettles v. Beckley,* 32 Wash. App. 606 (648 P2d 508) (1982), the Washington Court of Appeals affirmed an award of back support in a paternity proceeding under a statute providing for the recovery of support "[i]f existence of the fa-

ther and child relationship . . . has been . . . adjudicated. . . ." See also *Kathy L. B. v. Patrick J. B.*, 371 SE2d 583 (W.Va. 1988); *Baugh v. Carver*, 3 Ohio App. 3d 139 (444 NE2d 58) (1981).

Based on the foregoing, we conclude that the trial court erred in the present case in refusing to award back support to the appellant for those periods prior to the adjudication of his paternity when she had been supporting the child without the benefit of public assistance payments. However, we cannot agree with the appellant's contention that the amount of the back support to which she is entitled is to be measured by the father's ability to pay during the periods in question rather than by the expenses actually incurred by her on the child's behalf. OCGA § 19-6-13 provides that "[u]ntil otherwise provided voluntarily or by decree or order of a court, [parents are] liable to third persons for the board and support and for all necessaries furnished to or for [their] children." It has been held that this Code section is applicable between parents who are not married, although not between parents who are married. See *Smith v. Smith*, 136 Ga. 531 (71 SE 869) (1911); *Brown v. Brown*, 132 Ga. 712 (64 SE 1092) (1909). In the absence of any legislative enactment expanding this liability for "necessaries" to include liability for items which were not actually furnished to the child but which would have been furnished had the child's custodian been blessed with greater financial resources, we can conceive of no legal basis for awarding the appellant in this case back support in excess of the amounts she actually expended on the child's behalf.

The judgment of the trial court is reversed with direction that, upon the return of the case to the lower court, Chester's obligation to the appellant for back support be adjudicated in accordance with the standards set forth in this opinion.

*Judgment reversed and case remanded with direction. Birdsong and Cooper, JJ., concur.*

DECIDED APRIL 17, 1990 —
REHEARING DENIED MAY 1, 1990 —

*Christina Petrig, Wendy J. Glasbrenner, Patricia D. Barron, Vicky O. Kimbrel, Phyllis J. Holmen,* for appellant.
*David E. Ralston,* for appellees.