A98A0863. DEPARTMENT OF HUMAN RESOURCES
v. MITCHELL.
(501 SE2d 508)

ELDRIDGE, Judge.

On April 5, 1995, the Department of Human Resources ("DHR") filed a petition pursuant to OCGA § 19-11-1 et seq. alleging that the appellee-defendant, Eldridge F. Mitchell III, was the father of Jonathan Curtis Rewis and seeking both reimbursement of public assistance previously paid in support of the minor child and future child support payments. Mitchell has never been married to the minor child's mother, and his name does not appear on the minor child's birth certificate. Mitchell filed a timely answer denying paternity.

DHR filed a motion to compel DNA blood testing pursuant to OCGA § 19-7-45. After a hearing, the trial court issued an order compelling Mitchell to submit to a blood test for the purpose of determining paternity. At Mitchell's request, the trial court issued a certificate of immediate review on such order. However, the interlocutory appeal was denied by this Court.

After Mitchell failed to appear for his court-ordered paternity test, DHR filed a complaint for contempt on February 24, 1997. In response to the motion for contempt, Mitchell raised both due process and equal protection violations and a laches defense; both of these defenses, along with a statute of limitation defense, were raised previously in his answer.

DHR's motion for contempt was heard by the trial court, and after considering the evidence, arguments, briefs of counsel, and, by agreement, the defenses raised by Mitchell, the trial court found that DHR's claims were barred by the doctrine of laches and dismissed the petition. This Court then granted DHR's discretionary appeal.

1. DHR's first enumeration of error alleges that the trial court erred by improperly applying the equitable defense of laches in this action. We agree.

DHR's cause of action is brought pursuant to the statutory authority of the Child Support Recovery Act, OCGA § 19-11-1 et seq. Under such act "[t]he payment of public assistance to or on behalf of a child creates a debt due and owing the state by the parent or parents responsible for the support of the child." OCGA § 19-11-5. "By accepting public assistance for or on behalf of a child . . ., the recipient shall be deemed to have made an assignment to the department of the right to any child support owed for the child. The department shall be subrogated to the right of the child or children or the person having custody to initiate any support action existing under the laws of this state and to recover any payments ordered by the courts." OCGA § 19-11-6 (a). Further, OCGA § 19-11-8 (a) places a statutory duty on DHR to take action under the Child Support Recovery Act, the child support statutes, and other appropriate state and federal statutes to assure that a child who has applied for public assistance is supported by the responsible parent, when it appears that the child has been abandoned by one or both parents or that the responsible parent has failed to provide support to the child.

Not only is DHR proceeding under a specific statutory scheme, the underlying right that DHR seeks to enforce is statutory in nature, i.e., the right of an illegitimate child to receive support from its father upon proof and determination of paternity. At common law, the father of an illegitimate child had no duty to support his illegitimate offspring; the illegitimate child was the legal responsibility of its mother. *American Mut. &c. Ins. Co. v. Hogan*, 91 Ga. App. 891 (87 SE2d 661) (1955). However, statutorily in Georgia, "[i]t is the joint and several duty of each parent of a child born out of wedlock to provide for the maintenance, protection, and education of the child until he reaches the age of majority, except to the extent that the duty of one parent is otherwise or further defined by court order." OCGA § 19-7-24. " 'The duty of the father of an illegitimate child to support such child is not created by the judicial determination of paternity. That determination is merely a procedural prerequisite to the *enforcement of the duty* by legal action. The father's duty to support his child arises when the child is born.' [Cit.]" (Emphasis supplied.) *Weaver v. Chester*, 195 Ga. App. 471, 472 (393 SE2d 715) (1990). "[O]nce paternity is legally established, the father may be required to pay back support for past expenditures made on behalf of the child." *Hughes v. Dulock*, 207 Ga. App. 492, 493 (428 SE2d 406) (1993). Further, the right of a child to support belongs to the child and cannot be waived by a parent. *Worthington v. Worthington*, 250 Ga. 730 (301 SE2d 44) (1983); see *Nelson v. Mixon*, 265 Ga. 441, 442 (457 SE2d

669) (1995).

When a putative father fails to voluntarily support an illegitimate child, the determination of paternity is a condition precedent to court imposition of support. A paternity proceeding was also unknown at common law and is a creature of statute. OCGA § 19-7-40 et seq. The authority for DHR to bring a paternity action in the name of and for the benefit of a child is given in OCGA § 19-7-43 (a) (4). OCGA §§ 19-7-43 (d) and 19-7-45 mandate that the court order genetic tests to determine paternity unless "good cause" is shown why the genetic tests should not be conducted.

Therefore, this action brought by DHR is one of law and not of equity. "The doctrine of laches is a purely equitable defense and is not applicable to a complaint for the enforcement of a legal right."[1] *Stuckey v. Storms*, 265 Ga. 491 (458 SE2d 344) (1995); *Jones v. Tri-State Elec. Coop.*, 212 Ga. 577, 582 (3) (94 SE2d 497) (1956).

Further, to prevail on a plea of laches, it is essential that the pleading party prove harm caused him by the delay. In this case, there is no evidence of record to show that Mitchell was prejudiced by DHR's failure to bring this cause of action earlier. If it is proven that Mitchell is the father of the child, his duty of support would be no greater than if this suit had been brought at the time of the child's

---

[1] This case can be distinguished from *Haddon v. Dept. of Human Resources*, 220 Ga. App. 338 (469 SE2d 434) (1996). In *Haddon,* this Court sought to uphold a settlement agreement between the mother and the alleged putative father compromising and settling a pending abandonment warrant and any future actions regarding paternity and support of the minor child. It is noteworthy that this settlement occurred in 1978, prior to the 1980 enactment of OCGA § 19-7-45, which authorizes blood tests in paternity actions. Haddon never admitted paternity, and the mother never sought to have paternity legally established. In the settlement agreement, the mother admitted that paternity was disputed. The mother and Haddon agreed that Haddon would pay the mother a lump sum of $4,400 in return for her release from all present and future claims to establish paternity and for child support. The mother also agreed to indemnify Haddon and hold him harmless from any action initiated by her or anyone else rising out of the birth of the child. A petition to compromise a disputed claim was then filed in probate court. The guardian ad litem, who was appointed to represent the minor child, approved the agreement, and the probate court entered an order allowing the mother to compromise the claim and incorporating the terms of the settlement. The order of the probate court was never appealed. The mother never moved to set aside the agreement and judgment of the probate court. In 1994, 16 years after entering into the agreement with Haddon, the mother, who had never received public assistance for the minor child, made an application to DHR for child support enforcement services and thereby assigned her rights to child support to DHR. DHR filed a petition for *future* child support only. Under the particular facts of *Haddon,* this Court held that to allow the mother to pursue a claim through DHR that had long been settled and approved by court order would "violate the time-honored and practical principle of finality of settlements and court orders." *Haddon v. Dept. of Human Resources,* supra at 340.

Further, other states have specifically held that laches is not available as a defense in a paternity action because it is an action at law. See, e.g., *Cortland County Dept. of Social Svcs. v. Thomas, "ZZ"*, 534 NYS2d 720 (A.D. 3 Dept. 1988); *McNulty v. Heitman*, 600 SW2d 168 (Mo. App. E.D. 1980).

birth. Moreover, if a defense of laches was allowed in this type of action, it would encourage a putative father to deny paternity and attempt to delay the bringing of an action until such defense could be asserted, and he could thereby escape his statutory obligation of support.

2. Our holding in Division 1 renders it unnecessary to address DHR's remaining enumeration of error.

*Judgment reversed. McMurray, P. J., and Blackburn, J., concur.*

DECIDED MARCH 31, 1998 —
RECONSIDERATION DENIED APRIL 14, 1998 — 

*Thurbert E. Baker, Attorney General, Jeffrey L. Milsteen, Deputy Attorney General, William C. Joy, Dennis R. Dunn, Senior Assistant Attorneys General, Katherine S. Davis, Assistant Attorney General,* for appellant.

*Dwayne H. Gillis,* for appellee.