**FOURTH DIVISION**
**DILLARD, P. J.,**
**RICKMAN and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**October 29, 2020**

# In the Court of Appeals of Georgia

A20A0964, A20A1520. DAY v. MASON.

BROWN, Judge.

In these companion cases, Brandon Day appeals child support and attorney fee awards entered in two orders following a bench trial in his action for legitimation and custody of his minor daughter, K. R. D. In the first order, the trial court awarded future child support, half of K. R. D.'s extracurricular expenses, past child support, and attorney fees under OCGA §§ 9-11-37 and 19-9-3 (g) to K. R. D.'s mother, Ariel Mason. For the reasons explained below, we affirm this order except as to the awards of extracurricular expenses and attorney fees under OCGA § 9-11-37. In the second order, the trial court awarded appellate attorney fees to Mason under OCGA § 19-9-3 (g) for her defense of Day's appeal of the first order. We conclude that the statute does not authorize such fees, and we therefore reverse that ruling.

"In reviewing a bench trial, an appellate court views the evidence in the light most favorable to the trial court's ruling, defers to the trial court's credibility judgments, and will not set aside the trial court's factual findings unless they are clearly erroneous." (Citation and punctuation omitted.) *Cousin v. Tubbs*, 353 Ga. App. 873, n.1 (840 SE2d 85) (2020). So viewed, the evidence shows that Mason and Day were unmarried, but in a relationship, when K. R. D. was born in December 2016. Mason was then a full-time college student living with her parents, and Day was unemployed and living with his sister.

For the first few months of K. R. D.'s life, Day cared for her while Mason attended classes. When Day found a job, Mason hired nannies to care for K. R. D. at a cost of about $350 per week.[1] Day paid Mason $350 every other week — money that Mason testified was meant to cover K. R. D.'s childcare expenses on alternating weeks. Mason graduated from college in July 2017 and thereafter began working full-time, with an additional part-time job on the weekends. Mason and Day ended their relationship in late 2017, but Day continued to make regular payments to Mason.

---

[1] According to Mason, K. R. D. could not attend daycare due to her frequent illnesses.

Mason frequently requested additional money to cover K. R. D.'s non-childcare expenses, but — according to Mason — Day refused or ignored these requests.

In 2018, Mason enrolled K. R. D. in a mother's morning out program, and her nanny expenses dropped to about $275 per week. Around that same time, Day decreased the amount of his payments to Mason to $250 every other week. Once K. R. D.'s health improved, Mason enrolled her in a daycare that cost $255 per week. Day suggested some cheaper alternatives, which Mason rejected.

In October 2018, Day filed the instant action for legitimation, custody, and visitation. Mason filed an answer and counterclaim for paternity, child support, past child support, K. R. D.'s medical expenses not covered by insurance, and attorney fees. Following mediation, Mason agreed to the legitimation and the parties entered into a consent permanent parenting plan, which the trial court approved, that resolved custody and visitation issues. The case proceeded to a bench trial on the remaining issues.

With regard to Mason's claim for past child support, she presented evidence — including testimony and receipts — showing that she had spent $15,164.44 on non-childcare, non-medical expenses for K. R. D. since her birth, including clothes, diapers, formula, groceries, and toys; and $2,272.65 for K. R. D.'s mother's morning

3

out program. Mason testified that she wanted Day to pay for half of those expenses. Mason also testified that she had paid $915 on out-of-pocket childcare expenses "when [she] did not get enough money from [Day] for his weeks of childcare," and she sought reimbursement for that full amount. Mason claimed that she had given Day credit for the money he had already paid toward K. R. D.'s childcare expenses and that the additional money she sought was for his share of K. R. D.'s other expenses. Finally, Mason testified that she wanted Day to pay fifty percent of the expense of K. R. D.'s future extracurricular activities.

Day presented evidence that he had already voluntarily contributed $16,304 toward K. R. D.'s expenses since her birth, even in the absence of a child support order. According to Day, these payments were not strictly for childcare, as Mason claimed, but instead were "for total . . . child support period for [K. R. D.]" Day testified that Mason had failed to consult him before making purchases for K. R. D. and that she had spent "a ridiculous and excessive amount" on items that were not necessities. Day, however, did not specifically challenge any particular expenditure.

At the close of trial, Mason's counsel requested an award of attorney fees in the amount of $4,757 under OCGA § 9-11-37 on the ground that Day had failed to respond fully and timely to discovery requests. Counsel also sought $52,000 in

4

attorney fees under OCGA § 19-9-3 (g) because Day had "failed to move th[e] case forward."

Following trial, the trial court entered a final order setting forth the parties' gross incomes and relevant expenses and establishing the amount of Day's future monthly child support payments.[2] The court also awarded past child support to Mason, including $2,051.32 toward K. R. D.'s childcare expenses (including the mother's morning out program and "expenses incurred above [Day's] contributions toward childcare") and "$7,582.22 toward the other reasonable and necessary expenses for the minor child prior to the establishment of child support." The court directed Day and Mason to split the cost of K. R. D.'s extracurricular activities, but limited their obligation to "one (1) extracurricular activity for the minor child per season." Finally, the court ordered Day to pay all attorney fees that Mason requested — $4,757 under OCGA § 9-11-37 and $52,000 under OCGA § 19-9-3 (g).

We granted Day's application for discretionary review of the final order, resulting in the docketing of Case No. A20A0964. The trial court subsequently

_____

[2] On appeal, Day does not challenge the amount of the future child support payments, which was less than what Mason requested. The trial court also made awards regarding an income deduction order, health insurance, and uncovered medical expenses, which Day likewise does not contest here.

5

entered another order awarding Mason $12,000 in attorney fees under OCGA § 19-9-3 (g) "in anticipation of defending the pending appeal." Day filed a second application for discretionary review, which we also granted, resulting in the docketing of Case No. A20A1520.

*Case No. A20A0964*

1. *Amount of past child support.* Day raises several challenges to the trial court's award of past child support to Mason. We find that these challenges either were waived or lack merit.

Under OCGA § 19-7-24, "[i]t is the joint and several duty of each parent of a child born out of wedlock to provide for the maintenance, protection, and education of the child until the child reaches the age of 18 or becomes emancipated[.]" Further, "[o]nce paternity is legally established, the father may be required to pay back support for past expenditures made on behalf of the child." (Citation and punctuation omitted.) *Dept. of Human Resources v. Mitchell*, 232 Ga. App. 215, 216 (1) (501 SE2d 508) (1998). The measure of the mother's recovery for past expenses is "the expenses actually incurred . . . on the child's behalf." *Weaver v. Chester*, 195 Ga. App. 471, 473 (393 SE2d 715) (1990). We review a trial court's award of past child support for abuse of discretion, see *Jackson v. Irvin*, 316 Ga. App. 560, 561 (1) (730

6

SE2d 48) (2012), and we will uphold a trial court's factual findings if they are supported by any evidence. *Vereen v. Vereen*, 284 Ga. 755, 756 (1) (670 SE2d 402) (2008). With this legal backdrop, we turn to Day's arguments.

(a) Day claims that the expenditures for which Mason sought reimbursement were not reasonable and necessary. In its order, the trial court found that Mason had actually incurred the expenses for which she sought reimbursement and that those expenses were "reasonable and necessary expenses for the minor child prior to the establishment of child support." Day contends that many of the items Mason purchased for K. R. D. were not necessities,[3] that Mason "shopped often and spent lavishly," and that she was not entitled to reimbursement for K. R. D.'s childcare expenses while she was completing college. However, while Day objected generally at trial that Mason's purchases were excessive, he did not challenge the reasonableness of, or the need for, any particular expenditure below, and he cannot do so for the first time on appeal. See *Ford v. Hanna*, 293 Ga. App. 863, 868 (3), n.5 (668 SE2d 271) (2008) (issue not raised in trial court "presents nothing for appellate review").

---

[3] In particular, Day challenges Mason's expenditures on ear piercing, party supplies, a travel high chair, a walker, a table and chair, and other toys.

7

As to Day's generalized assertion at trial and on appeal that Mason spent extravagantly, Mason submitted receipts showing that she actually incurred the expenses for which she sought reimbursement. See *Weaver*, 195 Ga. App. at 473 (mother entitled to reimbursement for "expenses actually incurred . . . on the child's behalf"). As Mason's attorney pointed out at trial, the receipts do not show that Mason shopped at luxury stores. And while Mason conceded that she shopped for K. R. D. frequently, she explained that she did so because K. R. D. was a "bigger kid" who "quickly" outgrew her clothes. Finally, Mason testified that she included toys and books in her list of expenditures "[b]ecause [K. R. D.]'s in the home, and they were educational toys and books, and they were teaching her." Day, in contrast, offered no evidence at trial about what kind or amount of expenses for K. R. D. might have been reasonable and necessary. Under these circumstances, we find no clear error in the trial court's finding that Mason's expenses were reasonable and necessary and no abuse of discretion in the amount of the court's award. See *Smith v. Carter*, 305 Ga. App. 479, 480 (1) (699 SE2d 796) (2010) (finding no error in trial court's award of past child support to mother where "[she] testified as to her actual expenses and calculations underlying this figure, which expenses were based on her personal knowledge").

8

(b) Day argues that Mason should not get credit for items that someone else purchased for K. R. D., whether through gift cards or direct payments. While Day is correct that Mason can only recover for expenses she actually incurred, see *Weaver*, 195 Ga. App. at 473, there was evidence that Mason did, in fact, incur the claimed expenses.

With respect to gift cards, Mason testified that she paid for some of the items she bought for K. R. D. using gift cards or money that her parents had given her as presents on holidays. Citing *Hopkinson v. Hopkinson*, 265 Ga. 460 (458 SE2d 117) (1995), Day contends that he should receive credit for half of such purchases. In *Hopkinson*, the Supreme Court held that a party's obligation to pay for his former spouse's college expenses, set forth in the parties' divorce decree, should be reduced by the amount of the former spouse's government scholarships and grants. Id. at 460. Nothing in *Hopkinson* requires Mason to give Day credit for items that she purchased using her own resources, including resources received as gifts from her parents.[4]

_____

[4] Notably, Day sought credit at trial for gifts that his family gave to K. R. D.

9

With respect to direct payments, Mason testified that she sought reimbursement only for her own expenditures on K. R. D., not for those made by other people.[5] Although Day's attorney speculated at trial that Mason's parents must have helped her with K. R. D.'s expenses, the trial court was entitled to believe Mason's testimony to the contrary. See *Cousin*, 353 Ga. App. at 873, n.1.

(c) Finally, Day asserts that Mason cannot recover for past support because she accepted what he did pay and waited to pursue her claim until after he filed a legitimation action. However, Day cites no authority to support what appears to be a laches defense, and we have held that laches does not apply in this context. See *Mitchell*, 232 Ga. App. at 217 (1) (defendant father could not assert laches in defense of action for paternity, reimbursement of past assistance for child, and future child support).

2. *Credit for past child support.* Day argues that the trial court failed to give him credit for the $16,304 in child support that he voluntarily contributed to Mason. However, Mason testified at trial that she sought recovery only for the expenses she incurred after giving Day credit for his contributions , and the trial court noted in its

_____

[5] On appeal, Day argues for the first time that Mason's receipts show that many purchases were made with a credit card that did not belong to her. Again, Day has waived this argument by not making it below. See *Ford*, 293 Ga. App. at 868 (3), n.5.

order that Day had made prior "contributions toward childcare." We find no abuse of discretion.

3. *Authority to award back child support.* Day argues that the trial court lacked authority to require him to pay back support in excess of the voluntary payments he had already made to Mason. However, Day cites, and we find, no authority for the proposition that a father's payment of partial support before the establishment of paternity insulates him from subsequent liability for the remainder of his share. Although Day contends that our decision in *Bridger v. Franze*, 348 Ga. App. 227 (820 SE2d 223) (2018), supports his position, it does not. In *Bridger*, the trial court declined to award the mother "the medical, housing, and other costs already incurred in support of her daughter." Id. at 233 (4). We held that although the mother was entitled to seek back support under OCGA § 19-7-24, "the trial court was entitled as the trier of fact to find that the father had satisfied his past child support obligations and thus to decline her request." Id. at 233-234 (4). *Bridger* simply illustrates the deferential nature of our review here. Just as the trial court in *Bridger* did not abuse its discretion by declining to award past support, the trial court in this case did not abuse its discretion by opting to do so.

11

4. *Extracurricular expenses.* Day contends that the trial court erred by requiring him to pay for half of K. R. D.'s future extracurricular activities without making the necessary factual findings to justify a deviation from the child support guidelines. We agree.

The Supreme Court has explained that extracurricular expenses are normally included in the presumptive amount of child support:

> The language of OCGA § 19-6-15 (i) (2) (J) (ii) makes clear that a portion of the basic child support obligation is intended to cover average amounts of special expenses for raising children, including the cost of extracurricular activities. If a factfinder determines that the full amount of special expenses described in that division exceeds seven percent of the basic child support obligation, the "additional amount of special expenses shall be considered as a deviation to cover the full amount of the special expenses." Id. Such a deviation must then be included in Schedule E of the Child Support Worksheet and, as with other deviations from the presumptive amount of child support, the factfinder must make the required written findings. See OCGA § 19-6-15 (i) (1) (B).

*Turner v. Turner*, 285 Ga. 866, 867-868 (2) (684 SE2d 596) (2009), disapproved in part on other grounds, *McCarthy v. Ashment-McCarthy*, 295 Ga. 231, 233 (2), n.1 (758 SE2d 306) (2014). See also *Park-Poaps v. Poaps*, 351 Ga. App. 856, 866-871

12

(6) (833 SE2d 554) (2019) (reversing, under *Turner*, trial court's award of pro rata costs for child's extracurricular activities because court failed to make required findings to support deviation from guidelines).

Here, the trial court ordered Day to pay half of K. R. D.'s future extracurricular activities, with a limit of one activity "per season," but the court made no factual findings to support a deviation from the presumptive child support amount. Accordingly, we reverse this award.[6]

With no citation to authority, Mason argues that the court's award was appropriate because the parties had agreed to split the cost of K. R. D.'s extracurricular activities, with the only dispute being whether that cost would be capped. However, the trial court may not accept an agreement negotiated by the parties to deviate from the child support guidelines "if the agreement . . . does not comply with the provisions contained in this Code section and does not contain findings of fact as required to support a deviation[.]" OCGA § 19-6-15 (c) (6). Thus,

---

[6] We note that Mason testified that K. R. D. is not currently involved in any extracurricular activities. Accordingly, the trial could not have found that the full amount of her extracurricular expenses exceeded seven percent of Day's basic child support obligation, as required for a deviation. See OCGA § 19-6-15 (i) (2) (J) (ii). Under these circumstances, we reverse the award, rather than vacating it and remanding it.

13

even assuming the parties reached a fee-splitting agreement as argued by Mason, there is no evidence that any such agreement contained findings of fact to support a deviation. See *Holloway v. Holloway*, 288 Ga. 147, 150 (1) (702 SE2d 132) (2010) (trial court should have rejected parties' agreement to a deviation that did not comply with OCGA § 19-6-15 and did not contain supporting factual findings).

5. *Written factual findings*. Day argues that the trial court erred by failing to include written factual findings required under OCGA § 19-6-15 and to attach the parties' child support worksheet including the computation of support, and he asks us to remand the case for the court to correct these asserted deficiencies. But written factual findings are necessary only "[i]f the trial court determines that a deviation from the presumptive child support amount is warranted[.]" *Park-Poaps*, 351 Ga. App. at 866 (6). See also *Hamlin v. Ramey*, 291 Ga. App. 222, 227 (2) (661 SE2d 593) (2008) ("[I]f *no* deviation applies and the court or jury decides *not* to deviate from the presumptive amount of child support, then the order need *not* explain how the court or jury reached that decision.") (emphasis in original). In this case, the court imposed no deviations. And no remand is required for failure to attach a child support worksheet where, as here, the trial court's order sets forth the court's factual findings regarding the parties' incomes and expenses. See *Demmons v. Wilson-Demmons*, 293

14

Ga. 349, 349-350 (1) (745 SE2d 645) (2013) ("merely incorporating the gross monthly income information from the child support worksheet into the Final Order . . . would have made a remand unnecessary"); *Black v. Ferlingere*, 333 Ga. App. 789, 791 (2) (777 SE2d 268) (2015) (trial court must attach a completed child support worksheet, incorporate that document by reference, "*or* enter the pertinent information from those documents directly into the order itself") (emphasis supplied).

6. *Attorney fees under OCGA § 9-11-37.* Day contends that the trial court erred by awarding Mason $4,757 in attorney fees under OCGA § 9-11-37 for his failure to comply with discovery. Although Day concedes that his first attorney did not timely and adequately respond to discovery requests, he points out that Mason never filed a motion to compel, and the court never entered an order compelling discovery. We conclude that in the absence of any showing that Day violated a court order governing discovery, the fee award was an abuse of discretion.

In general, "[t]rial judges have broad discretion in controlling discovery, including imposition of sanctions, and appellate courts will not reverse a trial court's decision on such matters unless there has been a clear abuse of discretion." (Citation and punctuation omitted.) *Gropper v. STO Corp.*, 276 Ga. App. 272, 275 (1) (623 SE2d 175) (2005). Although OCGA § 9-11-37 permits trial courts to award attorney

15

fees as a sanction for failure to provide discovery, "[t]he general scheme of OCGA § 9-11-37 is that ordinarily sanctions can be applied only for a failure to comply with *an order* of the court." (Citation and punctuation omitted; emphasis in original.) *Carrier Corp. v. Rollins, Inc.*, 316 Ga. App. 630, 638 (5) (a) (730 SE2d 103) (2012). And while the violated order need not be an order granting a motion to compel under OCGA § 9-11-37 (a), our case law establishes that sanctions must be based on the violation of some sort of discovery order. See id. (affirming discovery sanctions for violation of scheduling order imposing discovery deadlines); *Gropper*, 276 Ga. App. at 275-276 (1) (trial court did not abuse discretion by imposing sanctions for "a pattern of violation of discovery rules, explicit direction by the court, and written orders of the court"); *Joel v. Duet Holdings*, 181 Ga. App. 705, 706 (353 SE2d 548) (1987) (sanctions were warranted, in the absence of a motion to compel, where party failed to comply with order to appear for deposition and produce documents). In this case, because the record contains no indication that Day violated any discovery-related court order, the trial court's award of attorney fees under OCGA § 9-11-37 was an abuse of discretion and is therefore reversed.

Mason argues that the award should be upheld under a "right for any reason" analysis because it would have been authorized under OCGA § 19-9-3 (g). Mason is

16

correct that "a trial court's award of attorney fees need not be vacated and remanded if the full amount of the trial court's award can be independently sustained under an alternative statutory provision that was asserted as a basis for an award of fees in the court below." (Citation and punctuation omitted.) *Moore v. Hullander*, 345 Ga. App. 568, 574 (2) (d) (814 SE2d 423) (2018). However, in this case,

> while it is apparent the trial court exercised its discretion in making the attorney fee award, we cannot say it is apparent that the trial court would have done so under OCGA § 19-9-3 (g). Unlike [OCGA § 9-11-37], a fee award under OCGA § 19-9-3 (g) would not necessarily be focused on [Day's] conduct. Thus, it is not apparent that the trial court would have awarded fees under OCGA § 19-9-3 (g)[.]

(Citation and punctuation omitted.) *Moore v. Moore-McKinney*, 297 Ga. App. 703, 712 (4) (678 SE2d 152) (2009). "Consequently, we cannot affirm the trial court's attorney fees award on the alternative basis of OCGA § 19-9-3 (g)[.]" *Hullander*, 345 Ga. App. at 575 (2) (d).

7. *Attorney fees under OCGA § 19-9-3 (g)*. Day challenges the trial court's award of $52,000 in attorney fees under OCGA § 19-9-3 (g), arguing that there was no evidence to support the award and that it was excessive. We find that there was

17

evidence to support the award and that Day has waived any challenges to its reasonableness.

The record shows that at the conclusion of the bench trial, Mason's counsel argued for an award of attorney fees under OCGA § 19-9-3 (g) on the ground that Day had "truly failed to move th[e] case forward."[7] Counsel listed the billing rates of the legal personnel who had worked on the case and represented that "[t]hese rates and fees . . . are fair and reasonable for experienced domestic relations attorneys in the Atlanta area[.]" Counsel further stated that she had the billing invoices with her in court, as well as charts summarizing the legal bills and settlement offers made in the case. After Mason's counsel finished speaking, Day's attorney said, "I don't have anything." Day's attorney did not ask to see the invoices or charts, did not seek to cross-examine counsel about the billing rates or invoices, and did not question the reasonableness of the rates or the legal work performed on Mason's behalf.[8] The trial

_____

[7] Specifically, counsel claimed that Day had not responded to Mason's settlement overtures, made no reasonable settlement offers of his own, failed to cooperate in the scheduling of a temporary hearing, misrepresented the parties' gross incomes, and sought a continuance shortly before the bench trial.

[8] Day's only argument at trial about Mason's OCGA § 19-9-3 (g) attorney fee claim was that no award was warranted because he had raised a "legitimate issue" about child support.

18

court then asked each party to submit a proposed order on attorney fees and indicated that it "w[ould] work from there." Day's attorney neither objected to this procedure nor requested any further hearing on attorney fees.

Three days after the bench trial, Mason's counsel emailed the trial court and Day's lawyer copies of the attorneys' discovery correspondence, a chart summarizing settlement offers, copies of those offers, a chart summarizing attorney fees, and copies of billing records. Mason's counsel later introduced these documents into the record. The record contains no indication that Day's attorney objected to the submission of these documents or otherwise sought to challenge their content or validity.

Two months after the bench trial, the trial court entered its final order, prepared by Mason's counsel,[9] which awarded attorney fees as follows:

> [T]he Court finds, in its discretion, that Mother has incurred substantial attorney's fees in defending against this action, including significant fees incurred in attempting to settle this case. Mother has presented evidence that Father failed to move the case forward and failed to meaningfully negotiate on the issues of child support, childcare expenses, back expenses and attorney's fees prior to the eve of trial. As

---

[9] Despite the trial court's request, no proposed order from Day appears in the appellate record.

19

such, Father is hereby ordered to pay Mother attorney's fees in the amount of $52,000.00 pursuant to OCGA § 19-9-3 (g). The Court finds that Mother has provided evidence that the fees incurred were fair and reasonable.

Day filed no motion for rehearing or post-judgment challenge to the fee award.

(a) Day argues that there was no evidence to support the fee award, but the record shows otherwise.

Under OCGA § 19-9-3 (g), a trial court

> may order reasonable attorney's fees and expenses of litigation, experts, and the child's guardian ad litem and other costs of the child custody action and pretrial proceedings to be paid by the parties in proportions and at times determined by the judge.

This provision "affords wide discretion to the trial court to award reasonable attorney fees and expenses in child custody actions," including legitimation cases. (Citation and punctuation omitted.) *Chalk v. Poletto*, 346 Ga. App. 491, 496 (2) (a) (816 SE2d 432) (2018). Such an award, however, "can only be authorized if there is sufficient proof of the actual costs and the reasonableness of those costs." (Citation and punctuation omitted.) *Jackson v. Sanders*, 333 Ga. App. 544, 561 (6) (773 SE2d 835) (2015).

20

At the bench trial, Mason's counsel provided information about the scope of the legal work performed on behalf of Mason, the applicable billing rates, and the billing invoices, and shortly thereafter she submitted those invoices, along with other supporting documentation, to the trial court and Day's lawyer. Thus, contrary to Day's claim, there was evidence in the record to support an award of fees under OCGA § 19-9-3 (g).[10] See *Sigafoose v. Cobb*, 345 Ga. App. 783, 789 (2) (815 SE2d 136) (2018) (affirming OCGA § 19-9-3 (g) fee award where "[party's] request for fees was supported by the submission of his attorney's billing records for the case"); compare *Spirnak v. Meadows*, 355 Ga. App. 857, 871 (7) (b) (844 SE2d 482) (2020) (fee award not authorized under OCGA § 19-9-3 (g) because "there is no evidence in the record about the attorneys' hourly rate or the number of hours expended").

(b) Day also contends that the billing records of Mason's counsel were inadequate, that no evidentiary hearing was held, and that the amount of the requested

---

[10] To the extent that Day complains that Mason's counsel did not formally introduce this evidence into the record until after the hearing, he has waived any challenge to this timing of events by not raising it below. See *Ford*, 293 Ga. App. at 868 (3), n.5. In any event, the trial court did not err by basing the fee award on post-trial briefing and evidence. See *Taylor v. Taylor*, 293 Ga. 615, 618 (4), n.3 (748 SE2d 873) (2013) (affirming fee award made, in part, under OCGA § 19-9-3 (g) where "the trial court directed the parties to submit written materials on attorney fees" after final hearing).

21

fees was unreasonable.[11] But Day never sought to question Mason's counsel about the fee request at the bench trial and did not request a further hearing. Accordingly, Day has waived these challenges. See *Taylor*, 293 Ga. at 618 (4), n.3 (rejecting appellant's challenge to reasonableness of $35,000 fee award made under OCGA § 19-9-3 (g) where appellant did not, in the trial court, dispute appellee's post-trial evidence of attorney fees or ask for a further hearing on the issue); *Gnam v. Livingston*, 353 Ga. App. 701, 703 (2) (839 SE2d 200) (2020) ("A party cannot acquiesce in a procedure by a trial court and then complain of it. Failure to object to the procedure amounts to a waiver.") (citation and punctuation omitted).

8. Finally, Day objects that the trial court erred by ordering him to pay the past child support and OCGA § 19-9-3 (g) fee awards within 90 days. We disagree.

Day argues, without citation to authority, that this deadline is unreasonable because he does not have the resources to pay. However, the trial court was not required to consider Day's ability to pay in awarding past child support. See *Weaver*,

_____

[11] Day further argues that his refusal to settle is not a valid basis for a fee award under OCGA § 19-9-3 (g), but he "did not raise this claim of error in h[is] application for discretionary appeal, and we cannot consider it." *Jackson,* 316 Ga. App. at 565 (2) (d). Even if we could, Day has mischaracterized the trial court's stated basis for the fee award, and — in any event — the court had "wide discretion" to fashion an award under OCGA § 19-9-3 (g). See *Chalk*, 346 Ga. App. at 496 (2) (a).

195 Ga. App. at 473 (rejecting argument that amount of back support "is to be measured by the father's ability to pay during the periods in question"). Further, "[OCGA] § 19-9-3 (g) does not require a trial court to consider the parties' financial circumstances in making the grant of attorney fees[.]" *Viskup v. Viskup*, 291 Ga. 103, 107 (3) (727 SE2d 97) (2012). And OCGA § 19-9-3 (g) provides that the trial court may award fees "to be paid by the parties in proportions and at times determined by the judge." We therefore find no abuse of discretion in the trial court's time frame for Day to pay these awards.

*Case No. A20A1520*

After Case No. A20A0964 was docketed in this Court, Mason filed in the trial court a motion for temporary attorney fees under OCGA § 19-9-3 (g) to cover her attorney fees during the pending appeal and until the conclusion of the litigation.[12] In response, Day argued that the statute did not authorize attorney fees for appellate proceedings and that the requested fees were unreasonable. The matter proceeded to a hearing, at which Mason submitted a summary of estimated fees. Thereafter, the trial court found that it was authorized to award fees under OCGA § 19-9-3 (g),

---

[12] Mason also sought attorney fees under OCGA § 19-7-50. But the trial court awarded fees under OCGA § 19-9-3 (g) alone, and Mason does not argue on appeal that OCGA § 19-7-50 applies here.

despite the pending appeal. The court further found that Mason's request was reasonable, and it awarded her $12,000 in fees.

On appeal, Day argues that OCGA § 19-9-3 (g) does not permit an award of appellate attorney fees. We agree.

"Generally, an award of attorney fees is not available in Georgia unless authorized by statute or contract." (Citation and punctuation omitted.) *Viskup*, 291 Ga. at 106 (3). Thus, whether a statute that authorizes an award of attorney fees also includes an award of appellate fees depends on the language of the statute. See *Kautter v. Kautter*, 286 Ga. 16, 20 (4) (c) (685 SE2d 266) (2009) (holding that the language of the attorney fee statute, OCGA § 19-6-2, permitted appellate fees). For example, "neither OCGA § 9-15-14 (b) nor OCGA § 13-6-11 authorizes a trial court to award expenses of litigation for proceedings before the appellate courts, because these statutes base the award of litigation expenses upon conduct that occurred at the trial court level." (Citation and punctuation omitted.) *Springside Condo. Assn. v. Harpagon Co.*, 298 Ga. App. 39, 40 (1) (679 SE2d 85) (2009); see also *Bishop v. Goins*, 305 Ga. 310, 312 (824 SE2d 369) (2019) (holding that OCGA § 16-5-94 (d) (3) does not permit attorney fee "awards for appellate proceedings occurring subsequent to the entry of" a stalking protective order). In contrast, appellate fees are

authorized under OCGA § 19-6-2. See, e.g., *Kautter*, 286 Ga. at 19-20 (4) (c) (noting that OCGA § 19-6-2 authorizes an award of attorney fees "at any time during the pendency of the litigation").

As noted, OCGA § 19-9-3 (g) provides that

> the judge may order reasonable attorney's fees and expenses of litigation, experts, and the child's guardian ad litem and *other costs of the child custody action and pretrial proceedings* to be paid by the parties in proportions and at times determined by the judge. Attorney's fees may be awarded at both the temporary hearing and the final hearing.
> . . .

(Emphasis supplied.) While the statute specifically references pre-trial proceedings, it is silent as to post-trial proceedings. See *Allen v. Wright*, 282 Ga. 9, 13 (3) (644 SE2d 814) (2007) ("[T]he express mention of one thing in an Act or statute implies the exclusion of all other things.") (citation and punctuation omitted). Moreover, "because any statute that provides for the award of attorney fees is in derogation of common law, it must be strictly construed against the award of such damages." (Citation and punctuation omitted.) *Kemp v. Kemp*, 337 Ga. App. 627, 633 (788 SE2d

25

517) (2016). Therefore, we conclude that OCGA § 19-9-3 (g) does not authorize an award of appellate attorney fees,[13] and we reverse the court's award of such fees.

*Judgment affirmed in part and reversed in part in Case No. A20A0964. Judgment reversed in Case No. A20A1520. Dillard, P. J., and Rickman, J., concur.*

---

[13] We note that the trial court referred to its award as one for "temporary" attorney fees. Because the award was made after a final bench trial resolving all issues in the case, however, we find that it cannot be justified as an award made at a "temporary hearing," as that term is used in OCGA § 19-9-3. See OCGA § 19-9-3 (e) ("Upon the filing of an action for a change of child custody, the judge may in his or her discretion change the terms of custody on a temporary basis pending final judgment on such issue.").